UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL CALLAGHAN,

    Petitioner,

v.                                              Case No. 8:06-cv-1887-T-23TGW

STATE OF FLORIDA,

    Respondent.
_____/

## **O R D E R**

Callaghan petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for, <u>inter alia</u>, battery on a law enforcement officer, for which he was sentenced to thirty days in the county jail, probation, and community service. The response (Doc. 10) to the petition is supported by numerous exhibits ("Respondent's Exhibit"). The respondent does not challenge the timeliness of the petition. Having considered the arguments of the parties and reviewed the record, this court concludes that the petition is meritless.

## **FACTS**

To protest a float he found offensive and disrespectful to Native Americans, Callaghan chained himself (specifically, his hand) to the roadway during the Chasco Fiesta parade in New Port Richey. In an effort to end Callaghan's disruption of the parade, a police officer attempted to unlock Callaghan's chain from the roadway, but the officer injured his hand in the resulting struggle.

## **STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, §2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this

> Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Moreover, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002). Accord Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Callaghan's convictions and sentences were affirmed on direct appeal in a per curiam decision without a written opinion (Respondent's Exhibit 3). Callaghan has the burden of overcoming all state court factual determinations by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). However, because Callaghan's convictions and sentences were affirmed on direct appeal without a written opinion, there are no findings of fact to which this court can defer. Nevertheless, the state appellate court's per curiam affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

- 3 -

As stated above, Callaghan must prove that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Ground One:

Callaghan alleges that in reaching their verdicts the jurors misinterpreted and ignored the jury instructions on the elements of both battery on a law enforcement officer and the lesser included offenses. The basis for this claim is an affidavit from a juror in which she stated that she acquiesced to voting guilty even though she had a reasonable doubt about Callaghan's guilt.

As a general principle, jury deliberations are protected from impeachment so that jurors can have "full and frank" discussions.

> There is little doubt that post-verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

Tanner v. United States, 483 U.S. 107, 120-21 (1987) (citations omitted). Florida law precludes delving into the thought processes and discussions between jurors in their attempt to reach a verdict. Devoney v. State, 717 So.2d 501, 502 (Fla. 1998) (an "affidavit to avoid the verdict may not be received to show any matter which does

- 4 -

essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the Court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast."). The same preclusion applies in federal law. See Rule 606(b), Fed. R. Evi. ("Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection

therewith . . ."). Consequently, Callaghan cannot show that the state court's rejection of this claim was contrary to or an unreasonable application of controlling Supreme Court precedent.

Ground Two:

Callaghan presents four claims of prosecutorial misconduct, none of which is reviewable on the merits due to procedural problems. The first two claims, that the prosecutor asked a witness to give an opinion on Callaghan's guilt and the prosecutor's improper statements during closing argument, are procedurally defaulted because trial counsel failed to object during trial.

The state opposed these two grounds on direct appeal by arguing that the claims were not preserved by a contemporaneous objection (Respondent's Exhibit 2 at 13). The state appellate court affirmed the conviction in a per curiam decision without a written opinion (Respondent's Exhibit 3). Generally, before a claim is procedurally

- 5 -

barred from federal review, a state court must reject reviewing the incorrectly presented claim.

> Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."

Harris v. Reed, 489 U.S. 255, 262 (1989), quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). But because the appellate court did not issue a written opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. at 261, quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983). However, because the state argued procedural default and the state court did not reject that argument, the state court is presumed to have applied the state's procedural default rules. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."), cert. denied, 490 U.S. 1071 (1989), and Nichols v. Wainwright, 783 F.2d 1540, 1542 (11th Cir.1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion.").

Callaghan procedurally defaulted his first two claims of prosecutorial misconduct alleged in Ground Two and he cannot show either "cause and prejudice" or "manifest injustice" to overcome the procedural default. Consequently, these claims are procedurally barred from federal review on the merits.

Callaghan's next two claims of prosecutorial misconduct, that the prosecutor asked the jury venire whether they could convict the defendant even if the victim did not testify and the prosecutor called two civilian witnesses to testify whether they were offended that the parade was stopped, are procedurally defaulted because Callaghan failed to present these claims to the state courts. These claims are, therefore, unexhausted. See generally McNair v. Campbell, 416 F.3d 1291, 1301-07 (11th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1828 (2006).

To meet the exhaustion requirement, Callaghan must present his claims to the state courts before raising them in federal court, and the claims raised in the federal court must be the same claims presented to the state courts. Picard v. Connor, 404, U.S. 270, 275 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "Mere similarity of claims is insufficient to exhaust." Duncan v. Henry, 513 U.S. 364, 366 (1995). Additionally, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). See also Kelley v. Sec'y for Dept. Of Corr., 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted). The reverse of this statement is likewise true, that is, it is not enough to present the federal claim to the state courts but not the facts necessary to

- 7 -

support the claim. See, e.g., Brown v. Estelle, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

The respondent opposes these grounds specifically based on Callaghan's failure to exhaust.[*] The failure to properly exhaust state court remedies when remedies are available results in a procedural default of the unexhausted claims. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."), McNair v. Campbell, 416 F.3d at 1305 ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."), Kennedy v. Herring, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), appeal after remand, Kennedy v. Hopper, 156 F.3d 1143 (11th Cir.), cert. denied sub nom Kennedy v. Haley, 526 U.S. 1075 (1999). Consequently, these claims are procedurally barred from federal review on the merits.

Ground Three:

---

[*] This court would have to apply the exhaustion doctrine, even if the respondent did not argue Callaghan's failure to exhaust, unless the respondent specifically waived the exhaustion requirement. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s requirement that the state must expressly waive exhaustion] applies and that McNair is procedurally barred from raising his extraneous evidence claim." McNair v. Campbell, 416 F.3d at 1305.

Callaghan alleges that the trial court erred by refusing to instruct the jury on the "necessity defense." The trial judge ruled that given the facts of this case—Callaghan's chaining himself to the roadway to interfere with the parade's progress as a means of protesting a float he believed was demeaning to Native Americans—Callaghan was not entitled to the "necessity defense" instruction because Callaghan failed to meet all of the requirements.

> There is a case, it's out of the Fourth District . . . which is W.E.P., Jr. v. State, located at 790 So.2d 1166. And what it says the necessary elements of a necessity defense are, one, the defendant reasonably believed that his action was necessary to avoid the imminent threat of death or serious bodily injury to himself or others; two, the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct; three, there existed no other adequate means to avoid the threatened harm except criminal conduct; and then four, harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it; and the last one is five, the defendant ceased the criminal conduct as soon as . . . the necessity or apparent necessity ended. And the cases all say that these elements must be present before the necessity defense can be offered.
>
> And starting with number one, the defendant reasonably believed his action was necessary to avoid the imminent threat of death or serious bodily injury to himself or others seems to me to be profoundly absent. And then number two, the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that [he] would be forced to choose the criminal conduct. Again, I would say that that's probably not going to be evident by what we've seen. And then there's three, there existed no other adequate means to avoid the threatened harm except criminal conduct; I haven't found that from the testimony so far, but I'll give you surely the opportunity to make all arguments you feel are necessary. Four, harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it; that may be the case or at the very least in the defendant's mind may be the case. And then five, the defendant ceased the criminal conduct as soon as necessity or apparent necessity ended, and I think five again is absent. So of the five that must be offered, only one it appears to me may be present.

Respondent's Exhibit 4 at 346-48.

The procedure for selecting jury instructions and charging the jury is controlled by state law. The trial judge rejected Callaghan's requested jury instruction based on state law. Federal review of this state law issue is very limited. "Questions of state law rarely raise issues of federal constitutional significance, because a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991) (citation omitted), cert. denied, 502 U.S. 1105 (1992). Federal habeas corpus review is especially limited when reviewing the propriety of jury instructions from a state trial. "Our limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process." Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997), cert. denied, 523 U.S. 1023 (1998). See also Watson v. Dugger, 945 F.2d 367, 371 (11th Cir. 1991) ("A federal court may find a due process violation if the failure to give additional requested instructions beyond those necessary for the offense makes the trial 'fundamentally unfair.' "). The trial court correctly determined that Callaghan had failed to meet each of the five elements state law requires before entitlement to a "necessity defense" instruction. Callaghan has not shown that his trial was "fundamentally unfair" without the requested instruction or that the denial of the instruction amounted to a violation of due process.

Accordingly, Callaghan's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. Callaghan's motion for summary judgment (Doc. 12) is **DENIED**. The

respondent's motion to dismiss individually named party (Doc. 7) is moot.  The clerk shall enter a judgment against Callaghan and close this action.

ORDERED in Tampa, Florida, on March 21, 2007.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE